# 25-1377(L),
# 25-1379(CON), 25-1418(CON)

## United States Court of Appeals

*for the*

## Second Circuit

———————◆———————

CONSUMER FINANCIAL PROTECTION BUREAU, THE PEOPLE OF THE STATE OF NEW YORK, by Letitia James, Attorney General of the State of New York, STATE OF COLORADO, ex rel Philip J. Weiser, Attorney General, STATE OF DELAWARE, ex rel. Kathleen Jennings, Attorney General, State of Delaware, THE PEOPLE OF THE STATE OF ILLINOIS, through Attorney General Kwame Raoul, THE STATE OF MINNESOTA, by its Attorney General Keith Ellison, THE STATE OF NORTH CAROLINA, ex rel. Joshua H. Stein, Attorney General, THE STATE OF WISCONSIN,

*Plaintiffs-Appellees,*

*(For Continuation of Caption See Inside Cover)*
—————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK, CASE NO. 24-CV-40, HON. MICHAEL J. ROEMER (MAGISTRATE JUDGE)

**BRIEF OF APPELLANTS FIDELIS LEGAL SUPPORT SERVICES, LLC, THE BUSH LAKE TRUST THROUGH TIMOTHY MILLER, TRUSTEE, RELIEF DEFENDANT, VETERIS CAPITAL LLC, BDC GROUP LLC, AND TWO SQUARE ENTERPRISES, INC.**

ALEC A. LEVY
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000

STEPHEN E. FRANK
ALEX H. LOOMIS
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
(617) 712-7100

*Attorneys for Appellants*

THOMAS W. MCNAMARA,

*Receiver-Appellee,*

– v. –

FIDELIS LEGAL SUPPORT SERVICES, LLC, THE BUSH LAKE TRUST
THROUGH TIMOTHY MILLER, TRUSTEE, Relief Defendant, VETERIS
CAPITAL LLC,

*Defendants-Appellants,*

STRATFS, LLC, FKA Strategic Financial Solutions, LLC, STRATEGIC
CLIENT SUPPORT, LLC, FKA Pioneer Client Services, LLC, STRATEGIC CS,
LLC, STRATEGIC FS BUFFALO, LLC, STRATEGIC NYC, LLC, BCF
CAPITAL, LLC, T FIN, LLC, STRATEGIC CONSULTING, LLC, VERSARA
LENDING, LLC, STRATEGIC FAMILY, INC., ANCHOR CLIENT
SERVICES, LLC., now known as CS 1 PAAS Services, LLC, BEDROCK
CLIENT SERVICES, LLC, BOULDER CLIENT SERVICES, LLC, CANYON
CLIENT SERVICES, LLC, CAROLINA CLIENT SERVICES, LLC, GREAT
LAKES CLIENT SERVICES, LLC, GUIDESTONE CLIENT SERVICES, LLC,
HARBOR CLIENT SERVICES, LLC, HEARTLAND CLIENT SERVICES,
LLC, MONARCH CLIENT SERVICES, LLC, Now known as CS2 PAAS
Services, LLC, NEWPORT CLIENT SERVICES, LLC, NORTHSTAR CLIENT
SERVICES, LLC, OPTION 1 CLIENT SERVICES, LLC, PIONEER CLIENT
SERVICING, LLC, ROCKWELL CLIENT SERVICES, LLC, ROYAL CLIENT
SERVICES, LLC, STONEPOINT CLIENT SERVICES, LLC, SUMMIT
CLIENT SERVICES, LLC, now known as CS 3 PAAS Services, LLC,
WHITESTONE CLIENT SERVICES, LLC, RYAN SASSON, JASON BLUST,
JOHN DOES 1−50, Unidentified, DANIEL BLUMKIN, ALBERT IAN BEHAR,
STRATEGIC ESOT, Relief Defendant, TWIST FINANCIAL, LLC, DUKE
ENTERPRISES, LLC, BLAISE INVESTMENTS, LLC, THE BLUST FAMILY
IRREVOCABLE TRUST THROUGH DONALD J. HOLMGREN, TRUSTEE,
JACLYN BLUST, Relief Defendant, LIT DEF STRATEGIES, LLC, RELIALIT,
LLC, RICHARD K GUSTAFSON II, TIMOTHY F. BURNETTE, MICHELLE
GALLAGHER, HEDGEWICK CONSULTING, LLC, CAMERON CHRISTO,
Relief Defendant, THE BLUST FAMILY 2019 IRREVOCABLE TRUST
THROUGH PAUL HULL, JR., TRUSTEE, Relief Defendant,

*Defendants,*

CLEAR CREEK LEGAL, LLC, CREDIT ADVOCATES LAW FIRM, LLC,
GREENSTONE LEGAL GROUP, BRADON ELLIS LAW FIRM LLC,
HAILSTONE LEGAL GROUP, HALLOCK AND ASSOCIATES, HARBOR
LEGAL GROUP, ANCHOR LAW FIRM, PLLC, BEDROCK LEGAL GROUP,
BOULDER LEGAL GROUP, CANYON LEGAL GROUP, LLC, GREAT
LAKES LAW FIRM, HEARTLAND LEGAL GROUP, LEVEL ONE LAW,
MEADOWBROOK LEGAL GROUP, MONARCH LEGAL GROUP,
NEWPORT LEGAL GROUP, LLC, NORTHSTAR LEGAL GROUP, OPTION 1
LEGAL, PIONEER LAW FIRM P.C., ROCKWELL LEGAL GROUP, SPRING
LEGAL GROUP, ROYAL LEGAL GROUP, SLATE LEGAL GROUP,

STONEPOINT LEGAL GROUP, THE LAW FIRM OF DEREK WILLIAMS, LLC, WHITSTONE LEGAL GROUP, WYOLAW, LLC, CHINN LEGAL GROUP, LLC, LEIGH LEGAL GROUP, PLLC, HALLOCK & ASSOCIATES LLC, GUSTAFSON CONSUMER LAW GROUP, LLC, MICHEL LAW, LLC, THE LAW OFFICE OF MELISSA MICHEL LLC, MOORE LEGAL GROUP, LLC, CIBC BANK USA, VALLEY NATIONAL BANK,

*Intervenors.*

– v. –

BDC GROUP LLC, TWO SQUARE ENTERPRISES, INC.,

*Movants-Appellants.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellants provide the following disclosures:

Appellant Fidelis Legal Support Services, LLC is a Nevada corporation and is fully owned by the Bush Lake Trust. No publicly held corporation owns 10% or more of its stock.

Appellant The Bush Lake Trust, is a Nevada trust, its trustee is Timothy Miller, and its sole beneficiaries are Cameron Christo's two children and their descendants. No publicly held corporation owns 10% or more of the interest in the trust.

Appellant Two Square Enterprises, Inc. is an Illinois corporation with no parent company. No publicly held corporation owns 10% or more of its stock.

BDC Group, LLC is a Nevada limited liability company. No publicly held corporation owns 10% or more of its stock.

Veteris Capital, LLC is a Nevada limited liability company. No publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

<b>Page</b>

CORPORATE DISCLOSURE STATEMENT ...................................................... i

TABLE OF AUTHORITIES ...................................................................iv

PRELIMINARY STATEMENT ..................................................................1

JURISDICTIONAL STATEMENT ..............................................................3

STATEMENT OF THE ISSUES ................................................................4

STATEMENT OF THE CASE ..................................................................5

    A.    The Complaint And The TRO...................................................5

    B.    The Magistrate Judge Referral And The Preliminary Injunction ........7

    C.    The Receiver's Designations And Appellants' Challenges.................9

    D.    Plaintiffs' Second Amended Complaint And Second Preliminary Injunction Motion...........................................11

    E.    The Orders On Appeal .......................................................13

SUMMARY OF ARGUMENT..................................................................16

STANDARDS OF REVIEW ...................................................................20

ARGUMENT...................................................................................20

I.     THIS COURT HAS APPELLATE JURISDICTION ...............................20

    A.    This Court Has Jurisdiction Under Section 1292(a)(1)....................22

    B.    This Court Has Jurisdiction Under Section 1292(a)(2)....................25

    C.    This Court Has Pendent Appellate Jurisdiction Over All Parts Of The Orders If Either Section 1292(a)(1) Or (2) Apply ................28

    D.    In The Alternative, This Court Has Mandamus Jurisdiction..............29

II.    THE ORDERS SHOULD BE VACATED OR REVERSED FOR LACK OF SUBJECT-MATTER JURISDICTION ....................................31

    A.    A Magistrate Judge Has Jurisdiction To Resolve Dispositive Matters Only If All Parties To The Case Consent ............................33

    B.    Appellants Did Not Consent To Magistrate Judge Jurisdiction ........38

III.   THE ORDERS SHOULD BE VACATED OR REVERSED ON THE MERITS .................................................................................47

A. The Magistrate Judge Incorrectly Enjoined New Parties Without Applying The Traditional Four-Factor Test For Injunctions ................................................................................48

B. The Magistrate Judge Incorrectly Ruled That Its Orders Were "Receivership Expansion" Orders, Rather Than Injunctions ............53

CONCLUSION ........................................................................................58

CERTIFICATE OF COMPLIANCE WITH RULE 32(g) ....................................59

CERTIFICATE OF SERVICE..........................................................................60

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Additive Controls & Measurement Sys. v. Flowdata, Inc.*,
    96 F.3d 1390 (Fed. Cir. 1996)...................................................................50

*Alemite Mfg. Corp. v. Staff*,
    42 F.2d 832 (2d Cir. 1930).............................................................49, 50

*Amey v. Colebrook Guar. Sav. Bank*,
    92 F.2d 62 (2d Cir. 1937)...................................................................25

*Amoco Prod. Co. v. Vill. of Gambell, AK*,
    480 U.S. 531 (1987)...........................................................................49

*Arista Records, LLC v. Tkach*,
    122 F. Supp. 3d 32 (S.D.N.Y. 2015) ...............................................51

*Burton v. Schamp*,
    25 F.4th 198 (3d Cir. 2022).................................................................37

*SEC v. Byers*,
    609 F.3d 87 (2d Cir. 2010)..................................................................20

*CCUR Aviation Fin., LLC v. S. Aviation, Inc.*,
    2021 U.S. Dist. LEXIS 83769 (S.D. Fla. May 3, 2021)....................58

*City of New York v. Golden Feather Smoke Shop, Inc.*,
    597 F.3d 115 (2d Cir. 2010)..................................................................8

*SEC v. Complete Bus. Sols. Grp.*,
    2020 U.S. Dist. LEXIS 253062 (S.D. Fla. Dec. 16, 2020)...............57

*SEC v. Complete Bus. Sols. Grp.*,
    44 F.4th 1326 (11th Cir. 2022)............................... 21, 23, 24, 25, 26

*Crowell v. Benson*,
    285 U.S. 22 (1932)..............................................................................35

*Digital Media Sols., LLC v. S. Univ. of Ohio, LLC*,
    59 F.4th 772 (6th Cir. 2023)...............................................27, 47, 55

iv

*Dr.'s Assocs. v. Reinert & Duree, P.C.*,
 191 F.3d 297 (2d Cir. 1999) ................................................................ 44, 49, 52

*E. Fork Funding LLC v. Deutsche Bank Nat'l Tr. Co.*,
 2025 WL 1554814 (2d Cir. June 2, 2025) ...................................................... 46

*Eberhard v. Marcu*,
 530 F.3d 122 (2d Cir. 2008) ........................................................................ 56

*SEC v. Elmas Trading Corp.*,
 620 F. Supp. 231 (D. Nev. 1985) .................................................................. 57

*Frutiger v. Hamilton Cent. Sch. Dist.*,
 928 F.2d 68 (2d Cir. 1991) ..................................................................... 22, 54

*SEC v. Gastauer*,
 93 F.4th 1 (1st Cir. 2024) ................................................................... 5, 42, 45

*Germano v. Dzurenda*,
 455 F. App'x 58 (2d Cir. 2012) .................................................................... 22

*Graham v. James*,
 144 F.3d 229 (2d Cir. 1998) ........................................................................ 46

*Greenbaum v. Lehrenkrauss Corp.*,
 73 F.2d 285 (2d Cir. 1934) .......................................... 3, 5, 19, 27, 55, 56, 57

*Grupo Mexicano de Desarrollo SA v. All. Bond Fund, Inc.*,
 527 U.S. 308 (1999) ......................................................................... 2, 30, 47

*Gucci Am., Inc. v. Weixing Li*,
 768 F.3d 122 (2d Cir. 2014) ........................................................................ 54

*Havens v. James*,
 76 F.4th 103 (2d Cir. 2023) ............................... 2, 5, 19, 47, 49, 50, 51, 52, 53

*Highland Ave. & B.R. Co. v. Columbian Equip. Co.*,
 168 U.S. 627 (1898) .................................................................................... 24

*Hill ex rel. Republic First Bancorp. Inc. v. Cohen*,
 40 F.4th 101 (3d Cir. 2022) .......................................................................... 30

*Howard Johnson Co. v. Detroit Loc. Joint Exec. Bd., Hotel & Rest.*
    *Emp. & Bartenders Int'l Union, AFL-CIO,*
    417 U.S. 249 (1974).................................................................46

*In re City of New York,*
    607 F.3d 923 (2d Cir. 2010)................................................ 29-30

*In re Lafayette Radio Elecs. Corp.,*
    761 F.2d 84 (2d Cir. 1985)........................................................41

*In re McKenzie,*
    180 U.S. 536 (1901)............................................................ 24-25

*In re Saffady,*
    524 F.3d 799 (6th Cir. 2008)..............................................23, 24

*In re Tronox Inc.,*
    855 F.3d 84 (2d Cir. 2017)................................................40, 41

*JTH Tax, LLC v. Agnant,*
    62 F.4th 658 (2d Cir. 2023)..............................................20, 49

*Kelleam v. Md. Cas. Co. of Balt.,*
    312 U.S. 377 (1941)................................................................55

*CFTC v. Kimberlynn Creek Ranch, Inc.,*
    276 F.3d 187 (4th Cir. 2002)......................................................5

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994)........................................................... 41-42

*Leighton v. One William St. Fund, Inc.,*
    343 F.2d 565 (2d Cir. 1965)....................................................55

*Liberte Cap. Grp. v. Capwill,*
    421 F.3d 377 (6th Cir. 2005)..................................................56

*Mark I, Inc. v. Gruber,*
    38 F.3d 369 (7th Cir. 1994)....................................37, 38, 45, 47

*United States v. Martin,*
    974 F.3d 124 (2d Cir. 2020)....................................................28

*Missouri v. Trump*,
128 F.4th 979 (8th Cir. 2025)........................................................30

*Mitchell v. Lay*,
48 F.2d 79 (9th Cir. 1930)............................................................26

*SEC v. MJ Cap. Funding, LLC*,
2021 U.S. Dist. LEXIS 259942 (S.D. Fla. Oct. 14, 2021) ................57

*ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props., LLC*,
951 F.3d 41 (1st Cir. 2020) .....................................................33, 38

*Moore v. Tangipahoa Par. Sch. Bd.*,
843 F.3d 198 (5th Cir. 2016)........................................................25

*Murret v. Kenner*,
894 F.2d 693 (5th Cir. 1990)........................................................37

*N.Y. Chinese TV Programs, Inc. v. U.E. Enters.*,
996 F.2d 21 (2d Cir. 1993)...........2, 17, 18, 20, 32, 34, 36, 37, 39, 40, 43, 44, 45

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022)........................................................................28

*SEC v. Nadel*,
2013 U.S. Dist. LEXIS 73816 (M.D. Fla. May 24, 2013) ................57

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012)........................................................57

*Netsphere, Inc. v. Baron*,
799 F.3d 327 (5th Cir. 2015)........................................................26

*Next Invs., LLC v. Bank of China*,
12 F.4th 119 (2d Cir. 2021).........................................................51

*NML Cap., Ltd. v. Republic of Argentina*,
699 F.3d 246 (2d Cir. 2012).........................................................52

*NML Capital, Ltd. v. Republic of Argentina*,
727 F.3d 230 (2d Cir. 2013)....................................................52, 53

*One Techs., LLC v. Amazon.com, Inc.*,
860 F. App'x 785 (2d Cir. 2021)..................................................44

*Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*,
    105 F.4th 46 (2d Cir. 2024)................................................................41

*United States v. Parse*,
    789 F.3d 83 (2d Cir. 2015)................................................................42

*People of State of Ill. ex rel. Hartigan v. Peters*,
    861 F.2d 164 (7th Cir. 1988)......................................................21, 29

*People Who Care v. Rockford Bd. of Educ.*,
    171 F.3d 1083 (7th Cir. 1999)...........................................................25

*SEC v. Rajaratnam*,
    622 F.3d 159 (2d Cir. 2010)..............................................................31

*Robert Ito Farm, Inc. v. Cnty. of Maui*,
    842 F.3d 681 (9th Cir. 2016).............................................................37

*Roell v. Withrow*,
    538 U.S. 580 (2003)........................................................................38

*CFPB v. Sasson*,
    2025 WL 1554514 (2d Cir. June 2, 2025) .............................6, 21, 24

*CFTC v. Schor*,
    478 U.S. 833 (1986)....................................................................35, 42

*United States v. Solco I, LLC*,
    962 F.3d 1244 (10th Cir. 2020).........................................................26

*Starbucks Corp. v. McKinney*,
    602 U.S. 339 (2024)........................................................................48

*SEC v. Torchia*,
    2016 U.S. Dist. LEXIS 147123 (N.D. Ga. Oct. 25, 2016) ................57

*SEC v. Torchia*,
    922 F.3d 1307 (11th Cir. 2019).........................................................24

*Sheet Metal Workers Int'l Ass'n, Loc. No. 359, AFL-CIO v. Ariz.
    Mech. & Stainless, Inc.*,
    863 F.2d 647 (9th Cir. 1988).............................................................43

viii

*Trump v. CASA, Inc.*,
606 U.S. ---, 2025 WL 1773631 (June 27, 2025) ........................................1, 47

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs., Co.*,
199 F.3d 94 (2d Cir. 1999).................................................................29

*Uniformed Fire Officers Ass'n v. de Blasio*,
973 F.3d 41 (2d Cir. 2020)................................................................23

*Weight Watchers Int'l, Inc. v. Luigino's Inc.*,
423 F.3d 137 (2d Cir. 2005)...........................................................40, 41

*Wheaton v. Daily Tel. Co.*,
124 F. 61 (2d Cir. 1903)................................................................27, 56

*Williams v. Beemiller, Inc.*,
527 F.3d 259 (2d Cir. 2008)........................................................33, 35, 43

*Williams v. King*,
875 F.3d 500 (9th Cir. 2017)...............................................................37

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)...............................................................2, 4, 19, 48, 49

*Woods v. Standard Ins. Co.*,
771 F.3d 1257 (10th Cir. 2014).............................................................34

*Yeldon v. Fisher*,
710 F.3d 452 (2d Cir. 2013) (per curiam)........................................34, 39, 47

## Statutes

12 U.S.C. § 5565(a)(1)........................................................................3

28 U.S.C. § 631 .............................................................................33

28 U.S.C. § 631(a) ..........................................................................33

28 U.S.C. § 631(e) ..........................................................................33

28 U.S.C. § 631(i) ..........................................................................33

28 U.S.C. § 636 .............................................................................15

28 U.S.C. § 636(b)(1)(A).....................................................................33

ix

28 U.S.C. § 636(c) ...................... 1, 2, 3, 4, 7, 17, 33, 34, 36, 37, 38, 40, 42, 43, 44

28 U.S.C. § 636(c)(2) ................................................................. 35

28 U.S.C. § 636(c)(3) ................................................................... 4

28 U.S.C. § 1291 ........................................................................... 4

28 U.S.C. § 1292(a)(1) ...................................... 4, 16, 20, 21, 22, 23, 25, 28, 29, 30

28 U.S.C. § 1292(a)(2) ...................................... 4, 16, 17, 20, 21, 26, 27, 28, 29, 30

28 U.S.C. § 1331 ........................................................................... 3

28 U.S.C. § 1345 ........................................................................... 3

Act of Feb. 13, 1925, ch. 229, § 1, 43 Stat. 937 ................................. 28

## Rules

Fed. R. Civ. P. 65 .............................................................. 19, 54

Fed. R. Civ. P. 65(c) ................................................................. 30

Fed. R. Civ. P. 65(d) ...................................... 15, 19, 49, 50, 51, 52, 53, 54

Fed. R. Civ. P. 65(d)(2)(C) ................................................... 19, 50

Fed. R. Civ. P. 66 ......................................................... 47, 55, 56

Fed. R. Civ. P. 73 ....................................................... 35, 40, 42, 44

Fed. R. Civ. P. 73(a) ................................................................. 35

Fed. R. Civ. P. 73(b)(1) ............................................................. 35

W.D.N.Y. Local Rule 73(c) ......................................................... 38

## Other Authorities

65 Am. Jur. 2d Receivers § 52 ................................................... 30

75 C.J.S. Receivers § 90 ............................................................. 56

14 *Moore's Federal Practice – Civil* § 73.03 (2025) ........................ 37-38

12 *Wright & Miller's Federal Practice & Procedure* § 3071.2 (3d ed. 1998) ..................................................................................38

Clark, *Treatise on the Law and Practice of Receivers* § 377 (2d ed. 1929) ...................................................... 25, 27, 55, 56

William Baude, *et al.*, *Hart and Wechsler's The Federal Courts and the Federal System* 546 (8th ed. 2025) ............................................33

## PRELIMINARY STATEMENT

This is an appeal from two Orders that exceeded statutory and constitutional limits on magistrate judges' powers and longstanding equitable "limits on [Article III] judicial authority." *Trump v. CASA, Inc.*, 606 U.S. ---, 2025 WL 1773631, at *14 (June 27, 2025).

The Consumer Financial Protection Bureau ("CFPB") and several state Attorneys General sued Strategic Financial Solutions, LLC and related entities for alleged violations of the Federal Trade Commission's Telemarketing Sales Rule ("TSR"). After the original defendants consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c), the assigned Magistrate Judge entered a preliminary injunction and appointed a receiver. The injunction imposed a global asset freeze and enjoined any party subject to the receivership from carrying on its business. It also included a sweeping delegation of judicial power: the Receiver could unilaterally designate new "Receivership Defendants" based solely on his *belief* that such entities were "owned or controlled in whole or in part by any of the Defendants." The Receiver exercised this authority to designate Appellants—who were not parties to the litigation—as Receivership Defendants subject to asset-freezing injunctions and receivership control.

1

When Appellants challenged these designations, the Magistrate Judge affirmed them through two Orders that violate fundamental jurisdictional and equitable principles. This Court should vacate or reverse the Orders, for two reasons.

*First*, the Magistrate Judge lacked subject-matter jurisdiction because Appellants never consented to magistrate judge jurisdiction as required by 28 U.S.C. § 636(c). Under this Court's controlling precedent in *New York Chinese TV Programs, Inc. v. U.E. Enterprises*, 996 F.2d 21 (2d Cir. 1993), magistrate judges must obtain consent from *all* parties before exercising jurisdiction over dispositive matters. The original defendants' consent cannot be imputed to Appellants merely because the Magistrate Judge concludes they are "controlled" by or "affiliated" with the original defendants, as happened here. Such jurisdictional bootstrapping by a non-Article III judge would eviscerate the statutory consent requirement.

*Second*, even if the Magistrate Judge possessed jurisdiction, the Orders exceed the bounds of traditional equity jurisdiction. Federal courts may grant equitable relief only if those remedies were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo SA v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). The Magistrate Judge's Orders violate these principles in two ways: (i) they improperly enjoin new parties without applying the traditional four-factor test under *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), contrary to this Court's precedent in *Havens v. James*, 76 F.4th 103 (2d Cir. 2023); and

2

(ii) their delegation to the Receiver of the power to expand his receivership to cover new companies contravenes Second Circuit precedent holding that receivers cannot swallow separate legal entities based on mere allegations of control, *see Greenbaum v. Lehrenkrauss Corp.*, 73 F.2d 285, 286-87 (2d Cir. 1934).

The Orders have inflicted severe harm on Appellants, which continues to accrue with each passing day. Fidelis has lost all its clients, Bush Lake cannot complete a legitimate Florida construction project, and the Receiver has threatened aggressive collection tactics. If affirmed, these Orders would create a dangerous precedent permitting magistrate judges to disregard statutory consent requirements and traditional equity limits, undermining litigants' Article III rights to independent federal adjudication.

This Court should thus vacate or reverse.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction over this action under 12 U.S.C. § 5565(a)(1), and 28 U.S.C. §§ 1331 and 1345. The Magistrate Judge, however, lacked subject-matter jurisdiction to enter the Orders under 28 U.S.C. § 636(c) because Appellants never consented to his exercise of jurisdiction. *See infra*, Part II.

The Magistrate Judge purported to issue the Orders, SPA-88, SPA-127, under Section 636(c), SPA-143–144, and the district court treated them as such. When

3

Appellants disputed the Magistrate Judge's authority to issue his decisions as "Orders" and appealed them to the district court as though they were Reports and Recommendations, Plaintiffs took the position that the decisions were properly designated Orders and that Appellants only recourse was to appeal them to the Second Circuit. *See* Dist. Ct. Dkt. 677 at 8. The Orders are thus appealable final orders under 28 U.S.C. § 1291. *See* 28 U.S.C. § 636(c)(3).

## STATEMENT OF THE ISSUES

I.    Whether this Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1) and (2) (or, in the alternative, mandamus jurisdiction) over orders that expand a preliminary injunction to enjoin new parties and place them under receivership control.

II.    Whether a magistrate judge has subject-matter jurisdiction under 28 U.S.C. § 636(c) to issue dispositive orders against parties who have not consented to magistrate judge jurisdiction, where the magistrate judge imputes the original defendants' consent to new parties based on his own findings of "control" and "affiliation."

III.    Whether orders enjoining new parties without applying the traditional four-factor test under *Winter*, 555 U.S. at 20, and summarily expanding receiverships to cover new corporations, violate established principles of equity

4

jurisdiction and this Court's precedent in *Havens*, 76 F.4th 103, and *Greenbaum*, 73 F.2d 285.

## STATEMENT OF THE CASE

### A.    The Complaint And The TRO

This case began in January 2024, when the CFPB and several state Attorneys General (collectively, "Plaintiffs") sued Strategic Financial Solutions, LLC ("StratFS") and related entities in the U.S. District Court for the Western District of New York, alleging that they had violated the TSR by collecting advance fees for debt-relief services before undertaking face-to-face sales presentations with their customers.    A-157.    Plaintiffs also sued several other individuals and entities, including Lit Def Strategies, LLC ("Lit Def"), as "relief defendants."    A-158–159. "A relief defendant is not accused of any wrongdoing" and "is part of a suit only as the holder of assets that must be recovered in order to afford complete relief."    *SEC v. Gastauer*, 93 F.4th 1, 12 (1st Cir. 2024) (quoting *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 (4th Cir. 2002)).

Plaintiffs alleged the original defendants' business model violated the TSR by utilizing third-party notaries to meet with potential enrollees in Plaintiffs' debt-relief services.    A-188–192.    Though the original defendants argued that this arrangement satisfied the TSR's "face-to-face" exemption, the district court and this Court

disagreed. *See CFPB v. Sasson*, 2025 WL 1554514 (2d Cir. June 2, 2025) (summary order).

When they sued, Plaintiffs sought an *ex parte* temporary restraining order ("TRO"), preliminary injunction, asset freeze, and appointment of a receiver to take over the original defendants' businesses. A-219; A-227. The District Judge (Vilardo, J.) granted Plaintiffs' request for a TRO, appointed Thomas W. McNamara as a temporary Receiver, and authorized him to take control of "Receivership Defendants." SPA-19–20. The TRO defined a "Receivership Defendant" as the "Corporate Defendants and their subsidiaries, affiliates, divisions, successors, and assigns, as well as any other business related to the Defendants' debt-relief services and which the temporary Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants." SPA-8.

The TRO granted the Receiver other broad powers, including the ability to bring any entity within the receivership estate by designating it as a "Receivership Defendant." SPA-8. Under the TRO, *any* nonparty can be made a Receivership Defendant so long as the Receiver "has reason to believe" it "is owned and controlled in whole or in part" by any of the original defendants. SPA-8. To add a new Receivership Defendant, the Receiver need only "promptly notify the entity as well as the parties [] and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court." SPA-25. Such designations

6

purport to be immediately effective, without further authorization from the court. SPA-25.

The TRO, of course, contains numerous injunctive provisions as well. For example, it enjoins Receivership Defendants to provide the Receiver immediate access to all of their "business premises," "Documents … keys and combinations," "passwords[,] … computer access codes of all computers used to conduct Receivership Defendants' business," "any data stored, hosted or otherwise maintained"; "[p]rovid[e] any information to the Receiver that the Receiver deems necessary"; "[a]dvis[e] all Persons who owe money to the Receivership Defendants that all Debts should be paid directly to the Receiver"; and more. SPA-26–33; SPA-37. The TRO also "enjoin[s]" the Receivership Defendants from "[t]ransacting any business," "using" consumer information covered by the TRO, and destroying business documents. SPA-31–32; SPA-37; SPA-40.

### B. The Magistrate Judge Referral And The Preliminary Injunction

After entering the TRO, the assigned District Judge recused himself and the Chief District Judge took over the case. A-329; A-366; A-418. In the text order on the permanent assignment, the Chief Judge encouraged the original parties to consent to having the Magistrate Judge resolve all or part of the case under 28 U.S.C. § 636(c). A-418. The order noted that "the parties may consent to have just the

pending motion for a preliminary injunction resolved" by the Magistrate Judge.  A-418.

Following an early February status conference, the original defendants consented to refer the pending preliminary injunction motion to the Magistrate Judge.  A-419.  The district court inquired one-by-one of each original defendant to ensure that they wished to consent to Magistrate Judge jurisdiction over dispositive motions.  A-440:18–443:15.  Among those who consented were original defendants Jason Blust and Lit Def.  A-442:15–17.  Appellants, however, were *not* parties to the proceedings, were not present, and did not consent.

On March 4, 2024, the Magistrate Judge granted Plaintiffs' motion for a preliminary injunction, finding Plaintiffs satisfied the four traditional criteria, including irreparable harm, albeit in modified form.  A-492.[1]  The Preliminary Injunction replaced the TRO but adopted verbatim the TRO's provisions, including those discussed above, and confirmed the Receiver's appointment.  SPA-49.

---

[1]  Under this Court's precedents, federal agencies "need not prove irreparable injury" in the traditional sense, just "that there is a reasonable likelihood that the wrong will be repeated." *City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 121 (2d Cir. 2010) (citation omitted); *see* A-496.  Appellants have taken the position that this modified test is no longer good law and that the district court must apply the traditional four-factor test, but that is not at issue in this appeal.

### C.    The Receiver's Designations And Appellants' Challenges

In the weeks and months after obtaining the TRO and Preliminary Injunction, the Receiver began designating Appellants as "Receivership Defendants." A-768–769; A-1496–1498.

Appellant Fidelis Legal Support Services, LLC ("Fidelis") is a single-member Nevada LLC established on January 25, 2021, by Cameron Christo. A-609. Neither Fidelis nor Mr. Christo were named as defendants in the original complaint.[2] And unlike the original defendants, Fidelis does *not* enroll debtors in debt-settlement programs. A-610. It provides administrative support to law firms that specialize in defending debtors against creditor lawsuits. A-609. It is not disputed that Fidelis actually provides legitimate services. Approximately 55% of Fidelis's revenue derives from law firms whose business model Plaintiffs have challenged. The remaining 45% derives from law firms that are *not* involved in this litigation, and whose business model is not at issue. A-611. There is no allegation that the revenue derived from those law firms was generated in violation of any regulation.

The remaining Appellants are associated with Fidelis or Mr. Christo. The Bush Lake Trust ("Bush Lake") was established in 2021 for the benefit of Mr.

---

[2]   Fidelis was added as a defendant in May 2024—more than two months after the Preliminary Injunction issued—and Mr. Christo was added as a "relief defendant" at that same time. A-848.

Christo's two children and their descendants. A-609. It owns Fidelis. A-609. Two Square Enterprises, Inc. ("Two Square") is an Illinois corporation founded by Mr. Christo in 2001 that offers software and consulting services to law firms. A-1566. BDC Group, LLC ("BDC") and Veteris Capital LLC ("Veteris") are unrelated entities that are owned or managed by Mr. Christo. A-1610–1611; A-1566.

Shortly before midnight on February 25, 2024, the Receiver notified Fidelis that he had designated it a Receivership Defendant subject to the terms of the TRO. A-768–769. The Receiver based his determination on documents that he concluded suggested that Fidelis is "beneficially owned or controlled by Defendant Jason Blust and is related to Receivership Defendant Lit Def." A-768–769. Fidelis challenged the designation, and the Receiver agreed to refrain from attempting to freeze Fidelis's assets during the pendency of the challenge. A-598–602; A-605. Between February 2024 and March 2025, Fidelis continued to operate normally. During this time, the Receiver himself referred Fidelis 6,000 new litigation files while managing original defendant StratFS. A-1201; *see* A-1357.

Several months after designating Fidelis as a Receivership Defendant, the Receiver likewise designated Bush Lake as a Receivership Defendant, based on the fact that it owns Fidelis. A-1490–1491. The Receiver similarly agreed to refrain from enforcing his determination against Bush Lake until the Magistrate Judge resolved Fidelis's challenge. A-1491. In April 2025, the Receiver designated Two

10

Square, BDC, and Veteris as Receivership Defendants. A-1495–1498. Bush Lake, Two Square, BDC, and Veteris filed objections challenging the designations. A-1465–1466; A-1562–1563.

As the remaining Appellants filed their objections and the Magistrate Judge began issuing the Orders, the Receiver's tactics became increasingly aggressive and costly. He threatened to raid the offices of Appellants' accountant (who was seven months pregnant) with U.S. marshals *only three days* after serving her with a discovery request (during tax season)—even after she indicated her intent to comply. *See* A-1501–1560; A-1561; A-1712–1713. He halted Bush Lake's multi-million-dollar construction project in Florida, and stopped paying its bills, prompting the construction company to threaten litigation if Bush Lake fails to pay. A-1712. He effectively shut down Fidelis, which has lost all its clients. A-1620.

All the while, the Receiver has billed the receivership estate more than $2 million over the past year, at a run rate of approximately $150,000/month. A-1713; *e.g.*, A-1622. In the district court and on appeal, he has persisted in submitting voluminous briefs that are redundant of the Plaintiffs' submissions, rather than simply joining those briefs to save costs.

### D. Plaintiffs' Second Amended Complaint And Second Preliminary Injunction Motion

After Fidelis objected that it could not be made a Receivership Defendant unless it was made party to the lawsuit and had a preliminary injunction entered

11

against it, Plaintiffs filed a second amended complaint, adding Fidelis as a defendant and Bush Lake and Mr. Christo as relief defendants. A-847. Plaintiffs alleged that Fidelis—which indisputably had no involvement in the enrollment of debtors by the original defendants—nonetheless violated the TSR by providing "substantial assistance" to those original defendants. A-916–918. Bush Lake and Mr. Christo, in turn, are alleged to have received payments from Fidelis. A-881.

Plaintiffs did not initially seek a second preliminary injunction against these new defendants. *See* A-928–930 (listing demand for relief). At a status conference four months *after* they filed the second amended complaint, however, the Magistrate Judge advised Plaintiffs that if they wanted to subject the new defendants to the Preliminary Injunction, they would "have to make a [new] motion." *See* A-947:21–949:15. When Plaintiffs refused to commit to filing a motion, the Magistrate Judge asked, "[D]o you want them bound by a preliminary injunction or you don't want them bound? If you want them bound, you are going to have a preliminary injunction hearing." A-949:17-21.

*Six weeks later*, Plaintiffs filed their second preliminary injunction motion, which sought to extend the original Preliminary Injunction to Fidelis, Mr. Christo, and Bush Lake, with the Receiver appointed "to cover Fidelis … and [] Bush Lake." A-999–1002.

The Magistrate Judge heard argument in early March 2025. During the colloquy, the Magistrate Judge told Plaintiffs that their "biggest problem" was showing irreparable harm. A-1323:16–18. Fidelis had shown that Plaintiffs had delayed seeking an injunction, and that between January 2024 and February 2025, the Receiver sent Fidelis *over 6,000 new litigation files* for administrative support, illustrating that the Receiver took no issue with how Fidelis ran its business. A-1201; A-1357:18–1358:4. Although Plaintiffs asserted that Fidelis could "go out and substantially assist[] another advanced fee operation," the Magistrate Judge was unconvinced. *See* A-1323:21–1325:17-19 ("You're not selling me on the irreparable harm."). The Magistrate Judge also expressed concern that Plaintiffs had offered no evidence that Fidelis had committed any TSR violation since the TRO was issued, and so a preliminary injunction would be "enjoining something that doesn't appear to be happening." A-1327:12–15.

### E.     The Orders On Appeal

But the Magistrate Judge did not rule on the new preliminary injunction motion. Instead, on March 25, 2025, he issued a decision affirming the Receiver's designation of Fidelis as a Receivership Defendant pursuant to the *original* Preliminary Injunction. SPA-88. Through a series of credibility determinations and adverse inferences, the Magistrate Judge concluded that Fidelis is a successor and assign of Lit Def—one of the original parties—and is secretly controlled, in whole

or in part, by defendant Mr. Blust. SPA-113–118. The Magistrate Judge based this conclusion on his finding that Mr. Blust, with the help of Mr. Christo, "established Fidelis in order for it to become a successor of Lit Def" in January 2021 (three years before the original complaint was filed and the Preliminary Injunction issued), that Mr. Blust "diverted, to Fidelis, a $750,000 payment owed to him and Lit Def" in 2022 (two years before the complaint was filed and the Preliminary Injunction issued), and that Mr. Blust transferred employees and equipment from Lit Def to Fidelis that same year. SPA-116–118. The Magistrate Judge recommended that the District Judge find Mr. Blust and Lit Def to be in contempt of the TRO based on his view that Lit Def operated, in a limited capacity, after the TRO entered, in violation of the TRO's terms. SPA-119–122. The Magistrate Judge did not enter a finding of contempt himself, however, nor did he find that Fidelis aided and abetted this contempt. *See* SPA-119–122.

Fidelis filed objections with the District Judge, A-1569, but the district court did not rule on Fidelis's motion. Instead, the Magistrate Judge did.

In May 2025, the Magistrate Judge issued a further "Decision and Order" designating Bush Lake, Two Square, BDC, and Veteris as Receivership Defendants, on the basis of his finding that they are "affiliates of Fidelis, and by extension Lit Def," and are "controlled by defendants and are related to defendants' debt-relief business." SPA-137–140. He cited no evidence indicating these entities received

14

advanced-fee funds and there was no allegation that these entities are alter egos of anyone. *See* SPA-127–145.

The Magistrate Judge rejected Appellants' arguments that he lacked jurisdiction based on Appellants' lack of consent under 28 U.S.C. § 636, SPA-144–145 & n.17, concluding that the lack of consent was not "significant," because both Lit Def and Blust *had* consented to Magistrate Judge jurisdiction, and because the other Appellants are "affiliates of Fidelis," SPA-144-145. The Magistrate Judge reasoned that he was merely "interpreting and effectuating" the Preliminary Injunction and thus needed no additional consent to enter his Orders. SPA-144.

The Magistrate Judge did not apply the traditional test for injunctive relief, *see* SPA-137–145, concluding that he was not required to do so because he was simply expanding a receivership, and because he was permitted by Federal Rule of Civil Procedure 65(d) to expand the scope of an injunction to cover third parties who are "in active concert with" the defendants, SPA-139–140.

Appellants timely appealed. A-1696; A-1697; A-1698.

After Appellants appealed and moved to stay enforcement of the Magistrate Judge's orders, the Magistrate Judge *sua sponte* decided to revisit Plaintiffs' long pending motion for a preliminary injunction against Fidelis, Bush Lake, and Mr. Christo. On June 17, the Magistrate Judge issued a minute order setting a status conference for the parties to discuss "whether a preliminary injunction remains

necessary as to any or all of the defendants or relief defendants … in light of the Court's recent decisions naming new receivership entities." A-153. At that hearing, the Magistrate Judge stated that Appellants' designation as Receivership Defendants "moot[ed]" the second preliminary injunction motion. A-1789.

## SUMMARY OF ARGUMENT

I.      This Court has appellate jurisdiction under both 28 U.S.C. § 1292(a)(1) and (2) because the Orders below constitute appealable injunctive relief and receivership appointment orders.

The Orders satisfy Section 1292(a)(1) because they extend the original Preliminary Injunction's injunctive provisions to new parties. The Preliminary Injunction explicitly "enjoin[s]" Appellants from conducting business, transferring assets, and engaging in numerous other activities. *See, e.g.*, SPA-58; SPA-75–76. These provisions meet the established test for injunctive relief: they are directed to parties, enforceable by contempt, and designed to protect substantive relief in more than temporary fashion. The Magistrate Judge's characterization of the Orders as mere "receivership expansion" orders rather than injunctions is at odds with their actual content. A-1768–1770.

The Orders also independently qualify for appeal under Section 1292(a)(2) as receivership appointment orders. Unlike routine administrative orders in ongoing receiverships, these Orders authorize a receiver to assume control over new entities

that had no prior involvement in the case. This constitutes a new appointment because Appellants had no opportunity and no right to appeal from the order appointing a receiver over the original defendants. The Orders thus fall within the category of "front-end" receivership orders that Section 1292(a)(2) was designed to make immediately appealable.

In the alternative, this Court has mandamus jurisdiction because Appellants lack adequate alternative remedies and face irreparable harm from the injunctive provisions and receivership control without the prospect of recovering damages due to sovereign immunity. The Orders present significant questions of law regarding magistrate judge jurisdiction and traditional equity principles that warrant immediate review.

II. This Court should vacate the Orders for lack of subject-matter jurisdiction.

The Magistrate Judge lacked subject-matter jurisdiction to issue the Orders because Appellants never consented to magistrate judge jurisdiction as required by 28 U.S.C. § 636(c). Under this Court's controlling precedent in *New York Chinese TV Programs*, magistrate judges must obtain consent from all parties before exercising jurisdiction over dispositive matters like preliminary injunctions and receivership appointments. *See* 996 F.2d at 23. The consent requirement is not merely procedural. It is "essential to the validity of the statutory system" and

17

protects parties' constitutional right to an Article III judge.  *Id.* at 24 (citations omitted).

Appellants were not parties to the proceedings when the original defendants consented to magistrate judge jurisdiction in February 2024, and Appellants have repeatedly objected to the Magistrate Judge's jurisdiction throughout the case.  The Magistrate Judge's attempts to circumvent this requirement fail on multiple grounds. First, his characterization of the Orders as merely "interpreting and effectuating" the original Preliminary Injunction is factually incorrect—the Orders extend injunctive relief to new parties, which constitutes a modification requiring fresh consent. Second, his reasoning that the original defendants' consent binds Appellants through "control" and "affiliation" is impermissibly circular.  The Magistrate Judge improperly assumes jurisdiction to make factual findings that purport to justify his own jurisdiction.  This is jurisdictional bootstrapping.  It is also the wrong legal test. Without piercing the corporate veil—which has not occurred—separate legal entities cannot be bound by other parties' waivers of constitutional rights.

III.    Even if the Magistrate Judge possessed subject-matter jurisdiction— which he did *not*—the Orders must be vacated because they exceed the bounds of traditional equitable principles.  Federal courts' equity powers are limited to remedies traditionally accorded by courts of equity and must depend on traditional principles of equity.  The Orders violate these principles in two ways.

18

First, the Orders improperly enjoin Appellants without applying the traditional four-factor test under *Winter*, 555 U.S. at 20. Courts must satisfy this test not only when initially issuing preliminary injunctions, but also when extending them to new parties. The narrow exception under Federal Rule of Civil Procedure 65 for parties "in active concert or participation" with defendants requires a finding of contempt by the original defendants and aiding and abetting by the nonparties. Fed. R. Civ. P. 65(d)(2)(C). Here, no contempt finding has been entered, and the Magistrate Judge made no finding that Appellants aided any violation of the original injunction. The Magistrate Judge's reliance on Rule 65(d) to bypass the *Winter* factors contradicts this Court's decision in *Havens*.

Second, even if the Orders were pure receivership expansion orders (as the Magistrate Judge contended), they violate historical equity practice. Courts must specify precisely which property falls within a receivership estate, and receivers cannot unilaterally expand their control to third-party property without separate judicial proceedings. The Magistrate Judge's delegation of expansion authority to the Receiver—allowing him to designate new "Receivership Defendants" based merely on suspected control—contravenes nearly a century of Second Circuit precedent, including *Greenbaum*, which held that corporate control alone cannot justify disregarding separate legal entities in receivership proceedings.

## STANDARDS OF REVIEW

This Court reviews the Magistrate Judge's subject-matter jurisdiction *de novo*. *See N.Y. Chinese TV Programs*, 996 F.2d at 23. This Court "review[s] a district court's decision to grant an injunction for abuse of discretion, but review[s] *de novo* the district court's interpretation of law." *SEC v. Byers*, 609 F.3d 87, 91 (2d Cir. 2010) (citation omitted). "A district court abuses—or more precisely, exceeds—its discretion when its decision rests on an 'error of law' or a 'clearly erroneous factual finding,' or 'cannot be located within the range of permissible decisions.'" *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 666 (2d Cir. 2023) (citation omitted).

## ARGUMENT

## I.    THIS COURT HAS APPELLATE JURISDICTION

This Court has appellate jurisdiction under both Sections 1292(a)(1) and (2). Alternatively, this Court has mandamus jurisdiction.

The Orders below designated Appellants as "Receivership Defendants" under the terms of the original Preliminary Injunction. *See* SPA-88; SPA-127. As a result, Appellants are subject to the Injunction's asset-freezing provisions, which "enjoin[]" them from "[t]ransferring … any funds … or any other Assets" that they own, control, or possess directly or indirectly through another entity. SPA-58–59; SPA-76. The Injunction further authorizes the Receiver to assume "full control" over Appellants' businesses, and to exercise all other powers of receivership. SPA-66.

The Preliminary Injunction's injunctive provisions and its provisions appointing the Receiver are independently appealable. 28 U.S.C. § 1292(a)(1) grants this Court appellate jurisdiction over interlocutory orders "granting, continuing, [or] modifying … injunctions," and Section 1292(a)(2) grants jurisdiction over interlocutory orders "appointing receivers." The Orders below trigger both provisions. Taking just the asset-freezing injunction as an example, "[t]he preliminary injunction froze [Appellants'] assets; the order appointing the receiver put them in the control of another person." *People of State of Ill. ex rel. Hartigan v. Peters*, 861 F.2d 164, 166 (7th Cir. 1988) (Posner, J.). The Orders are thus appealable under both Section 1292(a)(1) and (2).

Plaintiffs and the Magistrate Judge contend that the Orders are neither injunctions nor receivership appointment orders, but rather "receivership-expansion" orders. A-1768–1770 (citing *SEC v. Complete Bus. Sols. Grp.*, 44 F.4th 1326 (11th Cir. 2022)). That is plainly incorrect. It would mean that the original defendants who were subject to the Preliminary Injunction had an interlocutory appeal right (which they exercised, *see Sasson*, 2025 WL 1554514, at *2), but that any parties later added to the case and subjected to the Preliminary Injunction do not. Nothing mandates such an irrational result. Indeed, adopting Plaintiffs and the Magistrate Judge's view would be especially perverse because the Magistrate Judge did not commit the same errors—exercising jurisdiction without consent and

entering a preliminary injunction without considering the traditional injunction test—as to the original defendants. This appeal is thus the only time an Article III court has the chance to rule on the Magistrate Judge's wrongful rulings.

### A. This Court Has Jurisdiction Under Section 1292(a)(1)

The injunctive parts of the Preliminary Injunction satisfy the test for an "injunction" under Section 1292(a)(1). They are "directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint in more than temporary fashion." *Frutiger v. Hamilton Cent. Sch. Dist.*, 928 F.2d 68, 72 (2d Cir. 1991) (citation omitted); *see, e.g.*, *Germano v. Dzurenda*, 455 F. App'x 58, 60-61 (2d Cir. 2012). The Preliminary Injunction, which uses the word "enjoined" eight times, imposes an asset-freezing injunction on Appellants. SPA-58 ("[T]he Asset-Freeze Defendants [which include Relief Defendants and their successors] are hereby restrained and enjoined from … [t]ransferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds … or any other Assets."). It also "enjoin[s]" them from "[t]ransacting any … business." SPA-75–76.

Additionally, just last week, Plaintiffs and the Magistrate Judge effectively *conceded* that the Magistrate Judge's Orders are injunctive. At the Magistrate

Judge's direction, Plaintiffs withdrew their second motion for a preliminary injunction as to Appellants, on the basis that they had already secured the sought-after relief through the Receivership Defendant designation.[3]  A-1801.  The Magistrate Judge likewise concluded that Appellants' designation as Receivership Defendants "moot[ed]" the second preliminary injunction motion.  A-1789.  That is enough to bring this case within Section 1292(a)(1).  Plaintiffs also sought injunctive relief in their second amended complaint, A-928–930, and so the Orders must be considered injunctions because they "grant[] … 'in toto or in part injunctive relief demanded in the complaint,'" *In re Saffady*, 524 F.3d 799, 804 (6th Cir. 2008) (citation omitted).  "[T]he label applied to a restraint [by a lower court] is not determinative." *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 47 (2d Cir. 2020) (citation omitted) ("[A] restraint called a TRO may sometimes be regarded for purposes of appellate jurisdiction as a preliminary injunction.").[4]

The Receiver and Plaintiffs' reliance on *Complete Business Solutions* is misplaced.  In that case, the order appointing a receiver and expanding a receivership

---

[3]  Tellingly, Plaintiffs announced their intent to re-file the preliminary injunction motion as to Mr. Christo, who is *not* a Receivership Defendant.  A-1792–1793.

[4]  That said, the Magistrate Judge initially ruled that the Orders were "final judgment[s] of the district court, appealable" to the Second Circuit.  SPA-144.  The Magistrate Judge changed his mind only after Appellants appealed.  *See* A-1768–1770 (denying a stay because Appellants' "appeal will be dismissed by the Second Circuit for lack of appellate jurisdiction").

to cover new entities was not an injunction. It did not bar the defendants from conducting business. *See* SPA-88; SPA-127; SPA-58–59; SPA-75–76. Like all receivership orders, it simply required defendants to turn over certain assets to a receiver and prohibited parties from interfering with the receiver. *See* 44 F.4th at 1333. By contrast, the Eleventh Circuit has held that an injunction directing third parties turn over assets to a receiver is injunctive, as here—even though such an order also involves a receivership estate—because "it commands an action concerning the merits of the relief requested by the receiver." *SEC v. Torchia*, 922 F.3d 1307, 1314-15 (11th Cir. 2019) (cleaned up).

This case is like *Torchia*, not *Complete Business Solutions*. To be sure, *Complete Business Solutions* is correct that orders enjoining parties and orders appointing receivers are different. SPA-140 (citing *In re Saffady*, 524 F.3d at 804). But this Court has already recognized that the Preliminary Injunction here contains both "an asset freeze injunction and [an order appointing] a receiver." *Sasson*, 2025 WL 1554514, at *2. These provisions apply indefinitely, *see* SPA-58–59; SPA-75–76, and thus go far beyond standard language in a receiver appointment orders, like the one in *Complete Business Solutions*, that directs parties to turn certain property over to the receiver and that "disappear and cease to have any force" as soon as the receiver takes control. *Highland Ave. & B.R. Co. v. Columbian Equip. Co.*, 168 U.S. 627, 630 (1898) (cited in *Complete Business Solutions*); *see, e.g.*, *In re McKenzie*,

24

180 U.S. 536, 549 (1901) ("[T]he order [in *Highland*] was confined to the appointment of the receiver, and contained no injunction.").

Nor is the fact that the Preliminary Injunction contains both a receivership appointment order and injunctive provisions unusual. Courts often issue injunctions when they appoint receivers to protect the receiver's possession of the property. *See* Clark, *Treatise on the Law and Practice of Receivers* § 377, at 489-90 (2d ed. 1929); *see, e.g.*, *Amey v. Colebrook Guar. Sav. Bank*, 92 F.2d 62, 62-63 (2d Cir. 1937) (L. Hand, J.). In fact, many "equitable decrees [] impose a continuing supervisory function on the court," and such decrees "contemplate the subsequent issuance of specific implementing injunctions" and function as "injunction generator[s]." *Moore v. Tangipahoa Par. Sch. Bd.*, 843 F.3d 198, 200-01 (5th Cir. 2016). Every time such an injunction issues, it "is appealable." *Id.* (quoting *People Who Care v. Rockford Bd. of Educ.*, 171 F.3d 1083, 1086 (7th Cir. 1999)); *see also infra*, pp.40–42 (explaining that the Orders are not mere interpretations of prior injunctions, but new injunctions against new parties).

### B.    This Court Has Jurisdiction Under Section 1292(a)(2)

Moreover, independent of Section 1292(a)(1), the aspect of the Orders appointing a receiver over Appellants is appealable under Section 1292(a)(2). *Complete Business Solutions* is distinguishable on this point too. The appealing parties there had been defendants in the case from the outset. *See* 44 F.4th at 1329-

25

30. As a result, they could have challenged the original receivership appointment order—unlike Appellants, who could not. *See id.*

*Complete Business Solutions* hinged on this point. The Eleventh Circuit read Section 1292(a) to authorize only "'front-end' and 'back-end' receivership-related orders" appointing or winding down a receivership, but not "interim receivership-related orders." *Id.* at 1331. It relied on precedents holding that "an order" directing a defendant *already* subject to a receivership to turn over "new assets isn't a new 'appoint[ment]' order." *Id.* at 1332.

This case, however, is different. Here, a receiver was appointed with powers over *new* parties who "had no opportunity and no right to appeal from the order appointing a receiver" over the original defendants. *Mitchell v. Lay*, 48 F.2d 79, 85 (9th Cir. 1930). That distinguishes this case from run-of-the-mill receivership orders not subject to interlocutory appeal, on which *Complete Business Solutions* relied. *See Netsphere, Inc. v. Baron*, 799 F.3d 327, 332-33 (5th Cir. 2015) (order awarding receivership fees to a receiver and his counsel is not appealable); *United States v. Solco I, LLC*, 962 F.3d 1244 (10th Cir. 2020) (similar). Indeed, *Netsphere* suggests that any order allowing a receiver to "wrest management and control from those entrusted by the owners" over property *is* a receivership appointment order under Section 1292(a)(2). 799 F.3d at 332 (citation omitted). In sum, the Orders are

appealable "front-end" receivership orders *as to Appellants*, consistent with *Complete Business Solutions*.

In the alternative, *Complete Business Solutions* was mistaken to suggest that orders expanding a receivership to cover new entities is not appealable under Section 1292(a)(2). An order authorizing a receiver to take control of a *new company or entity*—as the Orders here do—is not akin to an unappealable order determining the Receiver's fees and ordering parties to turn over property already subject to the receivership, which are "entered in the normal course of receivership proceedings." 44 F.4th at 1331. This is so both as a matter of fairness (because usually a new company will not have had a chance to appeal before, *supra*, pp.21–22), and as a matter of equity. A court in equity "could not issue an injunction that 'extended so far as to protect assets outside the receivership.'" *Digital Media Sols., LLC v. S. Univ. of Ohio, LLC*, 59 F.4th 772, 780 (6th Cir. 2023). When third parties hold property that should belong to the receiver, the receiver has to "proceed by suit in the ordinary way to try his right to the property." *Wheaton v. Daily Tel. Co.*, 124 F. 61, 62 (2d Cir. 1903); *see* Clark, *supra*, § 377. Thus, a district court cannot summarily authorize a receiver to swallow companies not covered by a receivership order. *See Greenbaum*, 73 F.2d at 286; *see also infra*, pp.55–57 (discussing this line of precedent). It instead must appoint a new receivership over, or (as in *Torchia*) enjoin, the third party. Both sorts of orders may trigger an interlocutory appeal. The

Orders below accomplish the same thing as such injunctions and receivership and are thus likewise appealable.

Finally, it bears emphasis that Congress enacted Section 1292(a)(2)'s antecedent in the early twentieth century when the above limits on equity jurisprudence were well-established. *See* Act of Feb. 13, 1925, ch. 229, § 1, 43 Stat. 937. The Congress that enacted Section 1292(a), as a result, would have understood that a receivership could be expanded to cover a new company only via a new, appealable order appointing a receiver. *See, e.g.*, *United States v. Martin*, 974 F.3d 124, 139 (2d Cir. 2020) ("Congress legislates with familiarity of the legal backdrop for its legislation."). Consistent with this historical understanding, Section 1292(a)(2) should be understood to authorize interlocutory appeals form orders subjecting new entities to receiverships. *Complete Business Solutions* did not consider this historical context when interpreting Section 1292(a)(2), and thus, to the extent it endorsed a contrary interpretation of the statute, it is unpersuasive. *Cf. N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 25 (2022) ("Courts are [] entitled to decide a case based on the historical record compiled by the parties.").

### C. This Court Has Pendent Appellate Jurisdiction Over All Parts Of The Orders If Either Section 1292(a)(1) Or (2) Apply

This Court can exercise appellate jurisdiction over all components of the Orders if it finds that either Section 1292(a)(1) or (2) applies. Pendent appellate jurisdiction exists "(a) where an issue is 'inextricably intertwined' with a question

that is the proper subject of an immediate appeal, or (b) where review of a jurisdictionally insufficient issue is 'necessary to ensure meaningful review' of a jurisdictionally sufficient one." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs., Co.*, 199 F.3d 94, 97 (2d Cir. 1999) (citation omitted). Both grounds apply here.

If the Court holds that the Magistrate Judge lacked subject-matter jurisdiction to issue either the injunctive portion or the receivership portion of the Preliminary Injunction, then the Orders must be vacated in their entirety. Subject-matter jurisdiction for the one is inextricably intertwined with subject-matter jurisdiction for the other.

Moreover, it would be impossible to grant effective relief from a preliminary injunction freezing assets without also vacating the receiver's power to control those assets. *See Hartigan*, 861 F.2d at 166. "If this court should ultimately vacate the injunction but let the receivership stand because we have no jurisdiction to review the district court's refusal to dissolve it, [Appellants] will have got nothing from a successful appeal of an interlocutory order made expressly appealable by section 1292(a)(2)." *Id.* "The receiver would still control the assets, and could prevent [Appellants] from obtaining any benefit." *Id.*

### D. In The Alternative, This Court Has Mandamus Jurisdiction

Even if 28 U.S.C. § 1292(a)(1) or (2) did not apply, this Court would have mandamus jurisdiction. Mandamus can issue when (1) "the party seeking issuance

29

of the writ must have no other adequate means to attain the relief it desires"; (2) "the writ is appropriate under the circumstances"; and (3) "the right to issuance of the writ is clear and indisputable." *In re City of New York*, 607 F.3d 923, 932-33 (2d Cir. 2010) (cleaned up). All three conditions are satisfied.

*First*, there are no adequate means for Appellants to attain relief if this Court lacks jurisdiction under 28 U.S.C. § 1292(a)(1)-(2). Waiting until final judgment would require Appellants to suffer irreparable harm. An asset-freezing injunction is "the nuclear weapon of the law," *Grupo Mexicano*, 527 U.S. at 329 (cleaned up), and an order appointing a receiver "curtail[s] property rights in a way that may cause great harm," often "irreparabl[y]" so, *Hill ex rel. Republic First Bancorp. Inc. v. Cohen*, 40 F.4th 101, 111 (3d Cir. 2022) (citations omitted). These concerns are heightened here. Parties subject to a later-vacated injunction or receivership can ordinarily recover against the injunction bond or the plaintiffs who sought the receivership. *See* 65 Am. Jur. 2d Receivers § 52. But there is no injunction bond in this case because the United States need not post a bond, *see* Fed. R. Civ. P. 65(c), and sovereign immunity precludes Appellants from recovering damages from the United States or plaintiff States for wrongful receivership, *see, e.g.*, *Missouri v. Trump*, 128 F.4th 979, 996 (8th Cir. 2025) ("Missouri cannot recoup that financial loss through a damages award because of sovereign immunity, so this constitutes an irreparable injury.").

30

The record contains substantial evidence that Appellants are suffering irreparable harm.  Indeed, there is no dispute that, since its designation as a Receivership Defendant, Fidelis has lost *all* of its clients.  A-1619–1620.  This is a direct consequence of the Orders:  By designating Appellants as "Receivership Defendants," the Orders prohibit them from carrying on their business.  Additionally, the Receiver has used his power to block Bush Lake from completing a construction project in Florida, endangering the project and risking significant financial injury that will never be compensated.  A-1747–1748.  Meanwhile, the lead Plaintiff, the CFPB, has stopped prosecuting this case in recent months.  These so-called provisional measures thus increasingly appear to be permanent.

*Second*, mandamus is appropriate to review the "significant question[s] of law" posed by this appeal, *see infra*, Parts II-III.  *SEC v. Rajaratnam*, 622 F.3d 159, 171 (2d Cir. 2010) (citation omitted).

*Finally*, the Magistrate Judge abused his discretion as outlined *infra*, Parts II-III, justifying mandamus relief.  *See Rajaratnam*, 622 F.3d at 171.

## II.   THE ORDERS SHOULD BE VACATED OR REVERSED FOR LACK OF SUBJECT-MATTER JURISDICTION

The Orders designating Appellants as Receivership Defendants are void because the Magistrate Judge lacked jurisdiction to enter them without their consent. No Appellant had been joined to the case when the original defendants consented to the Magistrate Judge's plenary jurisdiction to decide Plaintiffs' first motion for a

preliminary injunction.  A-419.  Thus, no Appellant did, or even could, consent to the Magistrate Judge's jurisdiction, as required by statute and decades of caselaw. The original defendants' consent, moreover, did not and could not bind Appellants, as each is a separate legal person and became new parties (or nonparties) only after the original defendants consented.  This position is supported by the law of this Circuit and multiple others, the Western District's local rules, and leading treatises.

To justify his jurisdiction, the Magistrate Judge downplays the Orders as merely "interpreting and effectuating" the Preliminary Injunction, SPA-144, but that is both substantively incorrect and misses the import of the limitations on the Magistrate Judge's jurisdiction.  In reality, the Orders expand the Preliminary Injunction to new parties and nonparties who could neither consent to the Magistrate Judge's jurisdiction nor contest the merits of the Preliminary Injunction as applied to them.  The Magistrate Judge's contention that the original defendants' consent could bind Appellants through a mere finding of affiliation, SPA-144–145, is refuted by caselaw and *New York Chinese TV Programs*.  It is also circular: the Magistrate Judge assumes jurisdiction to make a finding that supports his own jurisdiction to make that finding.

If the strictures of Article III have any meaning, and if the Federal Magistrates Act is a valid delegation of the judicial power, the requirement for consent of the parties cannot be so easily circumvented.  This alone requires vacating the Orders.

## A. A Magistrate Judge Has Jurisdiction To Resolve Dispositive Matters Only If All Parties To The Case Consent

"Ever since 1789, the federal courts have employed officials other than Article III judges—sometimes called magistrates, sometimes commissioners—to handle certain adjudicative functions."  William Baude, *et al.*, *Hart and Wechsler's The Federal Courts and the Federal System* 546 (8th ed. 2025).  The Federal Magistrates Act of 1968, 28 U.S.C. § 631 *et seq.*, codifies the present regime.  District judges appoint magistrate judges for eight-year terms and may remove magistrate judges only for cause.  28 U.S.C. § 631(a), (e), (i).

Congress has strictly limited magistrate judges' jurisdiction to resolve matters subject to the judicial power.  A district court can generally refer any nondispositive pretrial matter to a magistrate judge to resolve.  *Id.* § 636(b)(1)(A).  But it may *not* refer to a magistrate judge a "motion for injunctive relief" and other dispositive matters.  *Id.*; *see Williams v. Beemiller, Inc.*, 527 F.3d 259, 265 (2d Cir. 2008).  For example, magistrate judges cannot issue an order appointing a receiver without all the parties' consent, because such an appointment has "a significant impact on a party's ability to manage and control its property," and is thus considered "dispositive."  *ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props., LLC*, 951 F.3d 41, 48 (1st Cir. 2020).  By contrast, Section 636(c) authorizes magistrate judges, "[u]pon the consent of the parties," to resolve "any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case."

For over thirty years, this Court has likewise held that a magistrate judge's jurisdiction under Section 636(c) requires the consent of "all parties." *N.Y. Chinese TV Programs*, 996 F.2d at 24. "[T]he consent of each party is essential to the validity of the statutory system that allows a magistrate judge to make binding adjudications" on dispositive matters. *Id.* Without it, "the magistrate judge's order has the effect only of a report and recommendation to the district judge, who upon the filing of objections must review *de novo* the recommendation." *Id.* at 25. The consent of *all* parties is not a mere procedural exercise; it "is essential to the validity of the statutory system that allows a magistrate judge to make binding adjudications." *Id.* at 24. Failure to obtain consent from all parties is "a jurisdictional defect that cannot be waived." *Yeldon v. Fisher*, 710 F.3d 452, 453-54 (2d Cir. 2013) (per curiam).

This Court's holding is not only precedential; it is correct. Section 636(c) authorizes magistrate judges to exercise jurisdiction over dispositive matters only upon "consent of *the* parties" (emphasis added). "The use of the definite article, 'the,' before the plural noun," parties, "leaves no doubt Congress intended that" Section 636(c) would apply "only when all of the" parties consented. *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1263 (10th Cir. 2014) (interpreting the Class Action Fairness Act, and noting that if Congress intended otherwise, it would have used an indefinite article).

The canon of constitutional avoidance further supports this reading. "Given the possible constitutional implications of delegating Article III judges' duties to magistrate judges, [this Court] ha[s] generally 'avoided constitutional issues" that would arise from magistrate judges resolving issues subject to the Judicial Power "by construing the Federal Magistrates Act narrowly.'" *Williams*, 527 F.3d at 264 (citations omitted); *see, e.g.*, *Crowell v. Benson*, 285 U.S. 22, 51 (1932) (cases involving litigation "of private right, that is, of the liability of one individual to another under the law as defined" must be decided by Article III "judges"); *see also CFTC v. Schor*, 478 U.S. 833, 848 (1986) (recognizing that this right "is subject to waiver").

Section 636's structure also demonstrates that universal consent is required. Section 636(c)(2) requires the clerk of court to "advise the parties that they are free to withhold consent without adverse substantive consequences." There would be no need to advise all "the parties" of their right to withhold consent if consent by only some of the partis sufficed.

Federal Rule of Civil Procedure 73 is even more explicit, providing that a magistrate judge may "conduct a civil action or proceeding" under Section 636(c) only when "*all parties* consent." Fed. R. Civ. P. 73(a) (emphasis added). Rule 73(b)(1) likewise creates a procedure where each party "must jointly or separately

file a statement consenting to the referral," and the "magistrate judge may be informed of a party's response … only if all parties have consented."

This means that, even when the original parties to a lawsuit consent to magistrate judge jurisdiction, parties that are later added to the case must *also* consent to the magistrate judge's jurisdiction under Section 636(c).  That was this Court's holding in *New York Chinese TV Programs*.  There, a corporation (Chinese TV Programs) sued several importers of Chinese-language television programs for copyright infringement.  996 F.2d at 22.  The original parties to the lawsuit consented to a magistrate judge's plenary jurisdiction under Section 636(c).  *Id.*  After liability was determined, but before the damages phase, three shareholders in Chinese TV Programs sold their stock in the corporation but retained the right to share in the damages.  *Id.*  When a dispute over a possible settlement arose, the former shareholders sought to intervene by motion to the district court, but the Magistrate Judge denied it.  *Id.* at 22–23.  The district court denied further review based on the initial parties' consent under Section 636(c).  *Id.* at 23.  This Court reversed and remanded, holding that the magistrate judge was without jurisdiction when she lacked "the consent of each party."  *Id.* at 24.

Importantly, this Court *rejected* the argument that the former shareholders' consent could be "inferred" based on their "earlier role as majority shareholders of the plaintiff corporation, for they now seek to protect different interests."  *Id.*  The

36

shareholders "were not parties to the action when the original consents to referral were executed and they have not yet, themselves, consented to exercise of plenary jurisdiction by the Magistrate Judge." *Id.* And the Court likewise rejected plaintiffs' contention that the former shareholders "merely stand in the shoes of NY Chinese, and [are] bound by its conduct in the lawsuit." *Id.* at 24-25 (cleaned up).

Other Circuits have similarly held that Section 636(c) requires consent from "any party directly affected by an order or a judgment issued by that magistrate judge." *Burton v. Schamp*, 25 F.4th 198, 209 (3d Cir. 2022); *see Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017); *Murret v. Kenner*, 894 F.2d 693, 695 (5th Cir. 1990) (per curiam).[5] The Seventh Circuit, for example, has held that a corporation's consent to a magistrate judge's jurisdiction cannot bind a corporate officer who is later added as a party without "piercing the corporate veil" under the state law of incorporation. *Mark I, Inc. v. Gruber*, 38 F.3d 369, 371 (7th Cir. 1994) (citing *N.Y. Chinese TV Programs*). Leading treatises similarly state: "When additional parties are added after the original parties to an action have consented to trial before a magistrate judge, consent of the new parties is also required." 14 *Moore's Federal*

---

[5] The Ninth Circuit has disagreed with this Court that a prospective intervenor's motion to intervene must be decided by the district court, but it still holds that once intervention is granted and the intervenor becomes a party, it "must give consent for a magistrate judge to exercise jurisdiction." *Robert Ito Farm, Inc. v. Cnty. of Maui*, 842 F.3d 681, 687 (9th Cir. 2016).

*Practice – Civil* § 73.03 (2025); *see* 12 *Wright & Miller's Federal Practice & Procedure* § 3071.2 (3d ed. 1998).

This rule properly balances the relevant equities and rights. Congress enacted Section 636(c) "to preserve a litigant's right to insist on trial before an Article III district judge insulated from interference with his obligation to ignore everything but the merits of a case." *Roell v. Withrow*, 538 U.S. 580, 588 (2003). On the flip side, "district courts have promulgated rules addressing the problem" that arises "when parties join the case after the litigants have opted for decision by a magistrate judge." *Mark I*, 38 F.3d at 370. The Western District of New York's Local Rule 73(c) provides, for example, that any time a party is "added to an action *after* the original parties' consent is approved by the assigned District Judge," that party "shall be notified by the Clerk of Court of the right to consent to proceed before the Magistrate Judge. If the new party does *not* consent to the Magistrate Judge's jurisdiction, the action shall be returned to the District Judge for further proceedings." *See also Mark I*, 38 F.3d at 370 (citing a similar rule from the Northern District of Illinois).

### B.    Appellants Did Not Consent To Magistrate Judge Jurisdiction

Here, the Orders granted "injunctive relief" and appointed a receiver—a type of dispositive motion that magistrate judges may not enter without the parties' consent—without Appellants' consent to the Magistrate Judge's jurisdiction. 28 U.S.C. § 636(c); *see ML-CFC 2007-6 P.R. Props.*, 951 F.3d at 48. Appellants

were not parties at the time any of the original parties consented to the Magistrate Judge's jurisdiction in February 2024, and Appellants never consented at any point thereafter. *See* A-423, 425–426. Fidelis did not even appear in this case until March 2024, A-587, Bush Lake was not named as a relief defendant until May 2024, A-847, and the remaining Appellants entered in April 2025, A-1495–1499. And Appellants repeatedly objected to the Magistrate Judge's jurisdiction to issue any immediately binding order. *See* A-1133–1134; A-1205–1206; A-1486–1488; A-1564.

*New York Chinese TV Programs* controls this case. Plaintiffs and the original defendants consented to the Magistrate Judge's jurisdiction over the preliminary injunction motion, but Appellants "were not parties to the action [at that time] and they have not yet, themselves, consented to exercise of plenary jurisdiction by the magistrate judge." 996 F.2d at 24. Appellants are distinct entities who "seek to protect different interests" from the original parties: their interest in not being designated Receivership Defendants subject to a preliminary injunction and receivership they had no opportunity to contest when it was originally entered. *Id.* Thus, the Orders are void and must be vacated. *See id.* at 24-25; *Yeldon*, 710 F.3d at 453-54.

The Magistrate Judge rejected this straightforward reading of Section 636(c), Rule 73, and *New York Chinese TV Programs* for two reasons. Both are unpersuasive and unsupported.

*First*, the Magistrate Judge incorrectly ruled that he does not require additional consent to issue the Orders because they merely "interpret[] and effectuat[e]" the Preliminary Injunction, for which he did have the original parties' consent. SPA-144. But the Orders do not merely interpret the Preliminary Injunction. When a court interprets its orders, it discerns "what it meant when it employed language that is later subject to question." *In re Tronox Inc.*, 855 F.3d 84, 98-99 (2d Cir. 2017) (reviewing whether the district court interpreted the term "Trust Derivative Claims" to mean all derivative claims within a bankruptcy court's jurisdiction). By contrast, when a court modifies its prior order, it extends the order "beyond its original reach." *Id.* at 98. "An interpretation does not change the status of the parties, while a modification 'alters the legal relationship between the parties, or substantially change[s] the terms and force of the injunction.'" *Weight Watchers Int'l, Inc. v. Luigino's Inc.*, 423 F.3d 137, 141-42 (2d Cir. 2005) (citation omitted).

Here, the Orders do not interpret the meaning of "Receivership Defendants." *See* SPA-88; SPA-127. That term is clearly defined in the original Preliminary Injunction. SPA-56. Instead, they designate new parties (and nonparties) as "Receivership Defendants" and (erroneously) subject them to the original

Preliminary Injunction. That extends the Preliminary Injunction "beyond its original reach," *In re Tronox*, 855 F.3d at 98, and "alters the legal relationship between" Appellants, Plaintiffs, and the Receiver, *Weight Watchers*, 423 F.3d at 141-42. Indeed, even the Magistrate Judge seemed to recognize that fact. After incorrectly stating that the Orders merely interpreted the Preliminary Injunction, the Magistrate Judge described the first Order as a "final order and judgment" that "are appealable in the same manner as an appeal from any other judgment of a district court." SPA-144. Orders *interpreting* injunctions are not subject to interlocutory appeal; only orders *granting* or *modifying* injunctions are. *Weight Watchers*, 423 F.3d at 141.

The Magistrate Judge's suggestion that he has inherent authority to "effectuate" the Preliminary Injunction against new parties without their consent is likewise incorrect. SPA-144 (quoting *In re Lafayette Radio Elecs. Corp.*, 761 F.2d 84, 92-93 (2d Cir. 1985)). *Lafayette Radio* recognized that *Article III* courts have inherent "ancillary and supplemental jurisdiction to enter orders and judgments designed to effectuate [their] decrees." 761 F.2d at 92. But magistrate judges are not Article III judges and "their powers are limited by statute." *Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 51 n.8 (2d Cir. 2024). And the Magistrate Judge's "power asked for here is quite remote from what courts require in order to perform their functions." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994) (rejecting expansive conception of ancillary

jurisdiction). The Magistrate Judge does not require the ability to rule on motions to expand the Preliminary Injunction to cover nonconsenting nonparties because the District Judge could afford such relief.

Moreover, even if the Magistrate Judge had ancillary jurisdiction to enforce the Preliminary Injunction against the original parties, he cannot override Appellants' constitutional and statutory rights to an Article III judge. *Cf. Gastauer*, 93 F.4th at 13 (district court lacks authority to enforce judgments against innocent third parties over whom it lacks personal jurisdiction). "Article III's guarantee of an impartial and independent federal adjudication" is "a personal right" that "is subject to waiver" by Appellants only, not by anyone else. *Schor*, 478 U.S. at 848; *see supra*, pp.33–34, 36–38. A "waiver" requires "an intentional relinquishment or abandonment of a known right or privilege," and "there is a presumption against the waiver of constitutional rights." *United States v. Parse*, 789 F.3d 83, 112 (2d Cir. 2015) (citations omitted). That, in turn, is the import of Section 636(c), Rule 73, longstanding Second Circuit precedent, and the Western District of New York's local rules, all of which require *all* parties to consent to a magistrate judge and waive their rights to an Article III judge. *Supra*, Part I.A. Were that not the case, the Magistrate Judge's purported authority to enforce his Preliminary Injunction without consent could extend to *anyone* in the world that the "Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants." SPA-56.

*Second*, disregarding *New York Chinese TV Programs*, the Magistrate Judge ruled that Appellants' "consent" was not "necessary to issue" the Orders. SPA-145. This was so, he ruled, because the original defendants Lit Def and Mr. Blust "expressly consented" to the Court's jurisdiction, and because, the Magistrate Judge found, "Fidelis is a successor of Lit Def that is controlled by [Mr.] Blust," and the other Appellants "are all affiliates of Fidelis." SPA-144–145.

But this is circular reasoning. A challenge to a magistrate judge's jurisdiction is a challenge to the magistrate judge's ability to *decide* such matters. A magistrate judge does not have jurisdiction to decide his own jurisdiction, nor can he impute the consent of existing parties to new parties. *Cf. Sheet Metal Workers Int'l Ass'n, Loc. No. 359, AFL-CIO v. Ariz. Mech. & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988) (arbitrator lacks jurisdiction to decide whether a party is an "alter ego" bound by an arbitration agreement it did not sign). Fidelis did not consent to have the Magistrate Judge make that factual determination. A-419–427. Nor did the other Appellants, over whom the Magistrate Judge found that he had derivative jurisdiction by virtue of their relationship with Fidelis. Permitting a magistrate judge to make factual findings that would negate Section 636(c)'s consent requirement would flip the statutory scheme on its head and raise serious constitutional concerns. *See Williams*, 527 F.3d at 264. Appellants did not agree to the Magistrate Judge's

43

jurisdiction or waive their right to appear before an Article III judge in this case. This ends the inquiry.

Even if the Magistrate Judge's reasoning were not circular, it would still be incorrect. When a parent corporation waives its constitutional right to an Article III judge, that consent is not imputed to separate legal persons under its control, even if those separate legal persons have "the same interests and attorneys," *Dr.'s Assocs. v. Reinert & Duree, P.C.*, 191 F.3d 297, 304-05 (2d Cir. 1999); *cf. One Techs., LLC v. Amazon.com, Inc.*, 860 F. App'x 785, 787 (2d Cir. 2021) (requiring an agency relationship before imputing a subsidiary's minimum contacts to its parent). That was the holding of *New York Chinese TV Programs*: A magistrate judge cannot impute a company's consent to its majority shareholders when those shareholders "have not yet, themselves, consented to exercise of plenary jurisdiction by the magistrate judge." 996 F.2d at 24.

The Magistrate Judge here sought to distinguish *New York Chinese TV Programs*, stating that its holding addressed only a magistrate judge's jurisdiction over "a motion by new parties to intervene in a lawsuit in between a liability trial and a trial as to damages." SPA-145 n.17. But that is not a valid distinction. *New York Chinese TV Programs* squarely held that Section 636(c) and Rule 73 require consent from *all* parties, even those joined after the original parties consent. *See* 996 F.2d at 23-24. The specific motion that the Magistrate Judge was deciding has no

44

bearing on this analysis, as there is no dispute that a preliminary injunction and receivership appointment order are precisely the kinds of dispositive motions that a magistrate judge cannot decide without the parties' consent.[6]

The original defendants' consent cannot be imputed to Fidelis absent veil-piercing, and the Magistrate Judge made no finding that the corporate veil could be pierced. *See* SPA-88; SPA-127; *Mark I*, 38 F.3d at 37. To the contrary, he found that Plaintiffs did *not* allege Fidelis was an "alter ego" of or in "common enterprise with" any other original defendants. A-1035 n.25. Likewise, to impute that consent to the remaining Appellants—based on the court's ruling that they are "affiliates" of Fidelis—would require yet another round of veil-piercing. That did not happen here either.

The Magistrate Judge's finding that Fidelis is Lit Def's "successor" has no legal import. The Magistrate Judge did *not* find—nor was there a basis to find—that Fidelis was a "successor in interest" that "quite entirely stepped into [Lit Def's] shoes, such as by a corporate merger." *Gastauer*, 93 F.4th at 11 (distinguishing a successor-in-interest from general references to successors). A successor-in-interest

---

[6] The Magistrate Judge also sought to distinguish *New York Chinese TV Programs* because, in his view, Appellants here are "directly connected to and fully enmeshed with the consenting defendants." SPA-145 n.17. "Directly connected to" and "fully enmeshed with" are not terms of art that carry legal import. In any case, this too is circular—a factual finding on which the Magistrate Judge relied to grant himself jurisdiction over Appellants' objection.

is generally bound to a waiver of its right to an Article III judge only if it agrees to that waiver by actual consent. *See, e.g.*, *Howard Johnson Co. v. Detroit Loc. Joint Exec. Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL-CIO*, 417 U.S. 249, 261 & n.5 (1974) (successor companies that are not alter egos are not bound by arbitration clauses they did not sign or otherwise agree to). That is not the case here. In fact, the Magistrate Judge suggests that Fidelis became a successor to Lit Def in 2021-2022, two years before the Preliminary Injunction issued. SPA-116–118. Fidelis cannot have succeeded to Lit Def's February 2024 consent based on its purported acquisition of Lit Def assets and employees from 2021-2022. *See, e.g.*, *E. Fork Funding LLC v. Deutsche Bank Nat'l Tr. Co.*, 2025 WL 1554814, at *3 (2d Cir. June 2, 2025) (successor assumes an obligation only if it "had actual notice" of the obligation "when it bought the property"). In any case, "the general rule is that a corporation that acquires the assets of another corporation is not liable for the torts of its predecessor." *Graham v. James*, 144 F.3d 229, 240 (2d Cir. 1998). Fidelis's purported acquisition of Lit Def assets thus does not suffice.

Absent such a merger or express consent to be bound by Lit Def's waiver to an Article III judge, there are no grounds to impute Lit Def's waiver to Fidelis, let alone to anyone else.

Nor, in turn, is there any authority for finding the other Appellants bound by the original defendants' consent merely because they are "affiliates" of Fidelis. As

in *Mark I*, Mr. Blust and Appellants "have been represented by different law firms and have managed their interests in the litigation independently." 38 F.3d at 371.

This Court need go no further. The Orders must be vacated for lack of subject-matter jurisdiction. *See Yeldon*, 710 F.3d at 453-54.

## III. THE ORDERS SHOULD BE VACATED OR REVERSED ON THE MERITS

To the extent that—notwithstanding the foregoing—the Court concludes that it has jurisdiction to review the Orders, it should set aside the Orders on the merits because they exceed the district court's equity jurisdiction. Equity jurisdiction refers to the merits issue of "whether a court of equity may grant relief." *Digital Media Sols.*, 59 F.4th at 779 (cleaned up). Federal courts' equity jurisdiction is not unbounded, but rather "encompasses only those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception." *CASA, Inc.*, 606 U.S. ---, 2025 WL 1773631, at *6 (citation omitted). The scope of available equitable relief thus "depend[s] on traditional principles of equity." *Grupo Mexicano*, 527 U.S. at 319 (citation omitted). These principles control the permissible bounds of injunctions and receiverships. *See Havens*, 76 F.4th at 111; *Digital Media Sols.*, 59 F.4th at 777-81. Indeed, Federal Rule of Civil Procedure 66 (governing equity receiverships) specifically provides that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule."

47

Here, the Orders must be set aside because they exceed the scope of traditional equitable practice by enjoining third parties without applying the traditional four-factor test for preliminary injunctions under *Winter*, 555 U.S. at 20. The Magistrate Judge believed that the Orders did not have to comply with *Winter* because they merely expanded a receivership estate. SPA-142–143. That ruling was incorrect. But in any case, the Orders are also inconsistent with the historical practice of equity receiverships.

### A. The Magistrate Judge Incorrectly Enjoined New Parties Without Applying The Traditional Four-Factor Test For Injunctions

Equity requires that a plaintiff "seeking a preliminary injunction [] establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "These commonplace considerations applicable to cases in which injunctions are sought in the federal courts reflect a practice with a background of several hundred years of history." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (cleaned up). "[A]bsent a clear command from Congress, courts must adhere to the traditional four-factor test" before granting injunctive relief. *Id.*

A court must satisfy this test not only when it issues a preliminary injunction, but also when it expands a preliminary injunction to cover new parties. After all, a court cannot issue an injunction unless it weighs "the effect *on each party* of the

48

granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (emphasis added) (quoting *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987)). This reflects that an injunction is an "*in personam* order" that "can bind only persons who have placed themselves or been brought within the court's power." *Dr.'s Assocs.*, 191 F.3d at 302. And an order is an injunction that must satisfy the four-factor test when it "alter[s] the status quo … by commanding some positive act," punishable by contempt. *JTH Tax*, 62 F.4th at 667 (quotations omitted).

One exception to this rule is at issue in this appeal: "[A] person who knowingly assists a defendant in violating an injunction" may be held in contempt. *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930) (L. Hand, J.). Rule 65(d)(2) codifies this longstanding equitable precept by providing that an injunction will "bind[] only the following who receive actual notice" of the order: "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with" them. *See Havens*, 76 F.4th at 111-12.

It does not follow, however, that an injunction may be entered against nonparties who are in active concert or participation with the parties. Rather, there is a distinction "between entering an injunction against a non-party, which is forbidden, and holding a non-party in contempt for aiding and abetting in the violation of an injunction that has been entered against a party, which is permitted."

*Id.* at 111 (quoting *Additive Controls & Measurement Sys. v. Flowdata, Inc.*, 96 F.3d 1390, 1395 (Fed. Cir. 1996)).  "Having a relationship to an enjoined party of the sort set forth in Rule 65(d) exposes a non-party to contempt for assisting the party to violate the injunction, but does not justify granting injunctive relief against the non-party in its separate capacity."  *Additive Controls*, 96 F.3d at 1395-96.  "In other words, only a named party's actions may be enjoined, and it is therefore the named party who must be the principal and moving force of the proscribed conduct."  *Havens*, 76 F.4th at 118.  No court can "lawfully enjoin the world at large, no matter how broadly it words its decree."  *Alemite Mfg.*, 42 F.2d at 832.

The Magistrate Judge and Plaintiffs did not dispute that, ordinarily, a court must apply the traditional four-factor test before entering an injunction against a new party.  But here, the Magistrate Judge *declined* to grant Plaintiffs' motion for a preliminary injunction as to Appellants *precisely because* Plaintiffs failed to "sell[] [him] on [] irreparable harm."  A-1324–1325.  And yet, the Magistrate Judge then went on to circumvent equitable limits on injunctions by concluding, under Rule 65(d), that he could achieve the same result simply by "extend[ing] the terms of the [original] injunction to … entities[] who are 'in active concert or participation' with defendants."  SPA-140 (quoting Fed. R. Civ. P. 65(d)(2)(C)).  And the Magistrate Judge confirmed that this is what occurred by subsequently finding that, in so doing, Plaintiffs' second motion for a preliminary injunction had been rendered moot as to

Appellants, and encouraging Plaintiffs to withdraw it, A-1789, which they did. (Tellingly, though, they did not withdraw their preliminary injunction motion as to Mr. Christo, who is not a Receivership Defendant bound by the Orders. A-1792–1793.)

The Magistrate Judge's ruling was contrary to *Havens*, which rejected the notion "that a nonparty need not act for the benefit of or to assist an enjoined party in violating the injunction in order to be bound by the injunction against the enjoined party." 76 F.4th at 116. "The relevant inquiry under Rule 65(d) is whether the nonparty ... aided or abetted the [enjoined parties'] violations of the court's orders." *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 134 (2d Cir. 2021). For this "aiding-and-abetting theory" to apply, "a court must first conclude that 'the party subject to the court's mandate committed contempt.'" *Havens*, 76 F.4th at 112 (citation omitted). "A court must next conclude that 'the challenged action' of the nonparty 'was taken for the benefit of, or to assist, a party subject to the decree' in violating the injunction." *Id.* (quoting *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 36 (S.D.N.Y. 2015) (Nathan, J.)). "The enjoined party must, in essence, be the principal or the intended beneficiary of the nonparty's conduct." *Id.* Only when this two-part test is satisfied can "the judicial power [] properly enjoin the nonparty on the 'assumption that the named defendant [was] an adequate representative of the rights' of the nonparty in the original proceeding." *Id.* (citation omitted).

This Court vacated an injunction binding nonparties on similar grounds in *Doctor's Associates*. The injunction in that case purported to bar "the nonparty appellants from prosecuting lawsuits that [did] not aid or abet the federal defendants in violating the injunctions entered against them." 191 F.3d at 303. The Court noted that each of those nonparties was "a discrete entity with its own private contract and private legal rights." *Id.* Accordingly, the Court held, Rule 65(d) did not permit the district court to enter an antisuit injunction against those nonparties, even if they had the "same interests and attorneys." *Id.* at 303-04.

The Magistrate Judge's reliance on *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230 (2d Cir. 2013), is unavailing. In that case—which *Havens* cited in support of its holding, 76 F.4th at 112—the injunction did not purport to impose independent duties on third-party financial institutions who were not defendants in the case. *NML Cap.*, 727 F.3d at 237-39. Instead, it merely barred those third-party institutions from assisting the defendant, Argentina, in violating the injunction against it. *Id.*[7] *NML* thus does not stand for the proposition that any third party (plus all its agents) may be enjoined without joining them to the case. *See id.*

---

[7] The injunction identified the third parties by name only because the Second Circuit expressed concern in a prior appeal that third-party financial institutions' obligations would be unclear absent greater specificity. *See NML Cap., Ltd. v. Republic of Argentina*, 699 F.3d 246, 264 (2d Cir. 2012).

at 239 (noting that the district court "correctly explained" the financial institutions would be bound by the injunction "through the automatic operation" of Rule 65(d)).

The Magistrate Judge declined to apply this test—and it could not be satisfied as to Appellants. There has been no finding that the defendants are in contempt of the original Preliminary Injunction, much less that Appellants aided and abetted any such contempt. The Magistrate Judge issued a Report and Recommendation to the district court recommending that Lit Def and Mr. Blust be found in contempt, SPA-120–124, but the district court has not yet ruled on it. And the Magistrate Judge did *not* find that any Appellant aided and abetted that contempt with knowledge of the TRO or Preliminary Injunction, let alone recommend that contempt be ordered against them. Thus, under *Havens* and *Doctor's Associates*, a preliminary injunction cannot issue against Appellants because the four-factor test for injunctive relief has not been satisfied.

## B.    The Magistrate Judge Incorrectly Ruled That Its Orders Were "Receivership Expansion" Orders, Rather Than Injunctions

The Magistrate Judge offered one additional reason for declining to apply the traditional four-factor test: "The placement of an entity in receivership is not the functional equivalent of an injunction, nor does it fall under the requirements of Rule 65." SPA-139–140. This is true, as far as it goes, but also irrelevant, for two reasons.

*First*, the Orders contained several injunctive provisions, insofar as they expanded the original "Preliminary Injunction" to bind Appellants. *See, e.g.*, SPA-

53

58–59; SPA-70–73; SPA-75–76. As discussed *supra*, pp.22–23, an injunction is any "order that is directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint in more than temporary fashion." *Frutiger*, 928 F.2d at 72 (citation omitted). The Preliminary Injunction, which uses the word "enjoined" eight times, imposes an asset freeze on Appellants. *See, e.g.*, SPA-58; SPA-76. It also "enjoin[s]" them from "[t]ransacting any … business." SPA-75–76. These provisions certainly constitute injunctions that this Court has long held must satisfy Rule 65(d). *See, e.g.*, *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 130 (2d Cir. 2014) (applying Rule 65(d) to an asset-freezing injunction). Separate provisions of the Preliminary Injunction appoint Mr. McNamara as receiver for the Receivership Defendants. SPA-66. But even if the Magistrate Judge was not required to consider the four-factor test before appointing a receiver, he *was* required to do so before entering injunctive relief against Appellants. *See also supra*, Part I.A.

*Second*, even if the traditional test for granting an equitable receivership applied instead, the Magistrate Judge did not apply that test either. He simply ruled that Appellants met the definition of a "Receivership Defendant" in the original Preliminary Injunction based on his view that Fidelis is a "successor" and "assign" of Lit Def controlled by Mr. Blust, and the other Appellants are "affiliates of Fidelis that are owned, controlled, or managed, in whole or in part, by Christo, who worked

54

together with Blust to create Fidelis as a secret successor to Lit Def." SPA-144. That is not enough. "[A] federal court of equity should not appoint a receiver where the appointment is not a remedy auxiliary to some primary relief which is sought and which equity may appropriately grant." *Kelleam v. Md. Cas. Co. of Balt.*, 312 U.S. 377, 381 (1941). There was no showing that any judgment entered against Appellants would not "be compensable in damages." *Leighton v. One William St. Fund, Inc.*, 343 F.2d 565, 568 (2d Cir. 1965). The Magistrate Judge did not even nod toward these governing legal tests.

The Magistrate Judge instead viewed his decision not as appointing a receiver, but rather as "expand[ing]" the prior receivership he had established. SPA-141. This too does not "accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66. At equity, the "order appointing a receiver should describe carefully *all* the property which the receiver is ordered to take into his possession." Clark, *supra*, § 377 (emphasis added). Once the receivership order specifies that property, the "receiver has no discretion as far as selecting the property to be taken." *Id.* Likewise, as discussed *supra*, pp.27–28, a court "could not issue an injunction that 'extended so far as to protect assets outside the receivership.'" *Digital Media Sols.*, 59 F.4th at 780 (quoting *Greenbaum*, 73 F.2d at 286). When the receiver believes that there is "property alleged to belong to the corporation [in receivership] [] in the possession of third persons who claim adverse title," the  receiver must

"proceed by suit in the ordinary way to try his right to the property … and apply to have the receivership extended to the property in their hands." *Wheaton v. Daily Tel. Co.*, 124 F. 61, 62 (2d Cir. 1903); *see* Clark, *supra*, § 377. Such claims for possession had to be tried before a jury. *See Eberhard v. Marcu*, 530 F.3d 122, 135-36 (2d Cir. 2008).

The Magistrate Judge skipped these procedures. Instead, he granted the Receiver self-executing authority to expand his receivership over new entities without first obtaining judicial approval. SPA-56; SPA-70. This is both alien to historical equity process and a violation of due process—which requires a hearing *before* a receiver takes assets from a third party. *See* 75 C.J.S. Receivers § 90 ("A court or receiver cannot compel third persons, without due process of law, to turn over funds to the receiver[.]"); *see also, e.g.*, *Liberte Cap. Grp. v. Capwill*, 421 F.3d 377, 383-84 (6th Cir. 2005) (due process requires a pre-deprivation hearing).

The Magistrate Judge also mistakenly concluded that a receivership defendant's mere affiliation with another entity automatically subjects that second entity to the receivership too. SPA-137–140. This Court has long rejected that view, holding that a receivership over a corporation cannot swallow a legally separate corporation merely because the former owns or controls the latter. *See Greenbaum*, 73 F.2d at 285-86 (in the context of a receivership, "[c]ontrol through ownership of shares does not fuse the corporations" so that their separate corporate forms can be

ignored).  Appellants here are legally "distinct corporation[s], having [their] own assets, [their] own creditors, and [their] own obligation[s]," separate from any original defendant.  *Id.* at 287; *see* A-616; A-662; A-665; A-762.  Ignoring these separate forms to include Appellants in the receivership estate on mere allegations of control "is contrary to the whole theory of an equity receivership" and cannot stand under traditional equitable principles.  *Greenbaum*, 73 F.2d at 287.

The Magistrate Judge should have applied this longstanding equity jurisprudence.  Instead, he disregarded corporate form on the basis of a smattering of largely unpublished district court cases that, in any case, offer little support for his Orders.[8]

---

[8]  Several stand only for the proposition that the corporate form may be disregarded if the independent company is an alter ego of the defendant or the court otherwise pierces the corporate veil, *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233-34 (D. Nev. 1985); *SEC v. Torchia*, 2016 U.S. Dist. LEXIS 147123, at *9-13 (N.D. Ga. Oct. 25, 2016)—which did not happen here.  Others allowed a receiver to take specific assets—but not separate corporations—into a receivership estate, *CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, 2021 U.S. Dist. LEXIS 83769, at *5-8 (S.D. Fla. May 3, 2021), or concluded that the separate company was founded with "scheme proceeds from defrauded investors," *SEC v. Nadel*, 2013 U.S. Dist. LEXIS 73816, at *6 (M.D. Fla. May 24, 2013)—which is itself grounds for a new receivership, *see, e.g.*, *Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012) ("A receivership also can be utilized when a judgment creditor seeks 'to set aside allegedly fraudulent conveyances by the judgment debtor,'" but "to justify the appointment of a receiver such claims would already have been reduced to judgment.") (citation omitted).  The remaining cases say little and are of minimal persuasive value.  *See SEC v. MJ Cap. Funding, LLC*, 2021 U.S. Dist. LEXIS 259942 (S.D. Fla. Oct. 14, 2021); *SEC v. Complete Bus. Sols. Grp.*, 2020 U.S. Dist. LEXIS 253062 (S.D. Fla. Dec. 16, 2020).

For these reasons, the Magistrate Judge erred as a matter of law in disregarding the equitable limits on injunctive relief, and his Orders should be vacated on the merits.

## <u>CONCLUSION</u>

For all these reasons, Appellants respectfully request the Orders be vacated and the case be remanded to the district court judge for further proceedings.

Dated:  July 11, 2025

Respectfully submitted,

*/s/ Alex H. Loomis*

Alec A. Levy
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000
aleclevy@quinnemanuel.com

Stephen E. Frank
Alex H. Loomis
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
stephenfrank@quinnemanuel.com
alexloomis@quinnemanuel.com

*Counsel for Defendants-Appellants Fidelis Legal Support Services, LLC, The Bush Lake Trust, Two Square Enterprises, Inc., BDC Group, LLC, and Veteris Capital, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(g)</u>

Pursuant to Federal Rule of Appellate Procedure 27, the undersigned counsel certifies that this document complies as follows:

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 13,596 words (based on the Microsoft Word word-count function), excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).

This motion complies with the typeface requirements of Federal Rules of Appellate Procedure 27(d) and 32(a)(5) and the type style requirements of Federal Rules of Appellate Procedure 27(d) and 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365, version 2408, in Times New Roman, 14-point type.

Dated:  July 11, 2025

*/s/ Alex H. Loomis*
Alex H. Loomis
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
alexloomis@quinnemanuel.com

*Counsel for Defendants-Appellants*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 11, 2025, I served the foregoing document on counsel for Plaintiffs-Appellees and Receiver-Appellee via ACMS.

Dated: July 11, 2025

*/s/ Alex H. Loomis*
Alex H. Loomis
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
alexloomis@quinnemanuel.com

*Counsel for Defendants-Appellants*